IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TERESA JUNE CZOSNOWSKI      *
         *
       v.             *      Civil Case No. RDB-13-1467
         *
COMMISSIONER, SOCIAL SECURITY      *
         *
         *************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b) and Local Rule 301.5(b)(ix). I have considered the parties' motions. ECF Nos. 14, 19. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Ms. Czosnowski applied for Supplemental Security Income on September 24, 2009, alleging a disability onset date of January 1, 2009. (Tr. 128-31). Her claim was denied initially on February 4, 2010, and on reconsideration on October 4, 2010. (Tr. 59-62, 66-67). An Administrative Law Judge ("ALJ") held a hearing on December 21, 2011, (Tr. 25-56), and subsequently denied benefits to Ms. Czosnowski in a written opinion dated January 6, 2012, (Tr. 9-24). The Appeals Council declined review, (Tr. 1-5), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Ms. Czosnowski suffered from the severe impairments of:

microcystic anemia; idiopathic thrombocytopenia purpura; hepatitis B and C;

> substance dependence; status-post splenectomy; status-post cholecystectomy; hiatal hernia; GERD; COPD/emphysema; major depressive disorder; anxiety disorder; hypertension; degenerative joint disease of the knees; venous insufficiency; status-post right ulna fracture; status-post fifth finger fracture; obesity; osteoporosis and kyphosis of the spine.

(Tr. 14). The ALJ determined that, including the substance use disorders, Ms. Czosnowski's impairments meet two of the mental health Listings and would render her disabled. (Tr. 15). However, the ALJ further concluded that if Ms. Czosnowski were to stop substance use, she would retain the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except the claimant can frequently push or pull with the right upper extremity and operate foot controls bilaterally, occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently handle and finger with the right upper extremity; must avoid concentrated exposure to extreme cold, extreme heat, humidity, excessive vibration, pulmonary irritants such as fumes, odors, dusts, gases, poorly ventilated areas, and hazardous moving machinery and unprotected heights; is limited to simple, routine, repetitive tasks in a low stress (no strict production quotas) work environment and can only occasionally and superficially interact with the public, coworkers, and supervisors.

(Tr. 16). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Ms. Czosnowski could perform if she were to stop substance use. (Tr. 20). Accordingly, the ALJ determined that Ms. Czosnowski was not disabled. *Id.*

Ms. Czosnowski disagrees. She raises six primary arguments in support of her appeal: (1) that her substance use is not material; (2) that the ALJ lacked an acceptable medical source for her physical RFC; (3) that the ALJ assigned too little weight to the opinions of her treating physician, Dr. Scott; (4) that the ALJ's mental RFC assessment is inadequate; (5) that the ALJ presented a faulty hypothetical to the VE; and (6) that the Appeals Council should have awarded benefits after her fiftieth birthday based on her changed position within the Medical-Vocational Guidelines. Although most of Ms. Czosnowski's arguments lack merit, I cannot find substantial evidence to support the ALJ's conclusions, particularly as to the availability of jobs

that could be performed by an individual with Ms. Czosnowski's RFC. Accordingly, I recommend that the case be remanded for further explanation. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion that Ms. Czosnowski is not entitled to benefits is correct or incorrect.

Beginning with the unpersuasive arguments, Ms. Czosnowski contests the ALJ's finding that she has a continuing problem with substance abuse, arguing that the record only demonstrates she had two isolated relapses. Pl. Mot. 25-26. I disagree. The ALJ's determination regarding Ms. Czosnowski's substance use is well founded and supported by the medical record. Upon a January, 2009 hospital admission, Ms. Czosnowski was diagnosed with polysubstance dependence. (Tr. 188). She also reported being jailed in the previous month for drug use, (Tr. 198), and attributed her weight loss over the past year to drug use, (Tr. 188), indicating that the relapses were not isolated and fleeting in nature. Furthermore, the determinative question is whether Ms. Czosnowski would be disabled if she stopped all substance use, as she alleges she has done. (Tr. 20). Even if the ALJ's finding that she has continued to engage in substance use is erroneous, then, it does not affect his ultimate conclusion on her disability, as he continued the five-step disability analysis and considered her impairments as if she ceased substance abuse. Any error, therefore, is harmless.[1]

Ms. Czosnowski next argues that the ALJ did not cite to any medical report establishing her physical RFC assessment. Pl. Mot. 26-27. However, an ALJ need not parrot a single medical opinion, or even assign "great weight" to any opinions, in determining an RFC. Instead, an ALJ is required to consider "all of the relevant medical and other evidence." *See* 20 C.F.R. §§

---

[1] Ms. Czosnowski also argues that the ALJ erred in finding that, when taking into consideration her substance abuse, she met Listing 12.04. Pl. Mot. 25-26. However, if she did not meet the Listing, as Ms. Czosnowski contends, it would render the ALJ's drug addiction and abuse determination (DAA) immaterial. If the Listing was not met including her substance abuse issues, it certainly would not have been met if the alleged substance abuse is taken out of consideration.

3

404.1545(a)(3), 416.945(a)(3); *see also Felton-Miller v. Astrue,* 459 F.App'x 226, 230-31 (4th Cir. 2011) (determining that an ALJ need not obtain an expert medical opinion as to an RFC, but should base an RFC on all available evidence). The physical RFC determined by the ALJ in this case takes into account all of the evidence cited by the ALJ, including the results of pulmonary function tests and examinations, (Tr. 17-18, 327, 409, 413); the improvement in her hematocrit and hemoglobin levels and venous sufficiency with abstinence from substance use, (Tr. 18, 232); and the improvement in her arthritis with medication, (Tr. 18, 334). The ALJ assigned only modest weight to the opinion from the state agency physician suggesting that Ms. Czosnowski's physical impairments were non-severe, because the ALJ believed that the record demonstrated some severe physical issues. (Tr. 18, 354). However, the ALJ also assigned only modest weight to the opinions of Ms. Czosnowski's treating physician, Dr. Nathan Scott. (Tr. 18-19). The ALJ noted that while Dr. Scott opined that Ms. Czosnowski requires a cane to walk and uses a home nebulizer every four to six hours, the records in fact reflect that she can ambulate without a cane and does not require oxygen supplementation, but uses it as a preference. (Tr. 19) (*Compare* Tr. 419, 423 *with* Tr. 335, 409). A treating physician's opinion merits controlling weight only when two conditions are met: 1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and 2) it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(c)(2); *Craig,* 76 F.3d at 590 (refined by a later amendment to regulations as described by *Pittman v. Massanari,* 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001)). The ALJ therefore appropriately considered the discrepancy between the examination notes and laboratory tests and Dr. Scott's opinions. *See Forsyth v. Astrue,* No. CBD-09-2776, 2011 WL 691581, at *4 (D. Md. Feb. 18, 2011) (finding the ALJ properly assigned less than controlling weight where, in relevant part, the physician's conclusions were inconsistent with other physicians' notes and his own treatment records); *Cramer v. Astrue,* No. 9:10-1872-SB-BM,

2011 WL 4055406, at *9 (D.S.C. Sept. 12, 2011) (upholding assignment of less than controlling weight to opinions "that were based in large part on the Plaintiff's self-reported symptoms rather than clinical evidence and that were not consistent with the doctor's own treatment notes"); *see generally* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). In light of the substantial evidence to support the physical RFC assessment, then, I find no error either in that assessment or in the assignment of weight to Dr. Scott's opinions.

The last unsuccessful argument turns on whether the Appeals Council should have awarded benefits as of the date of Ms. Czosnowski's fiftieth birthday in November of 2012, because she entered a different category under the Medical-Vocational Guidelines ("the Grids") on that date. Pl. Mot. 31. I concur with the reasoning set forth in *McGreevy v. Astrue,* No. JKS-10-123, 2010 WL 4823672, *1-2 (D. Md. Nov. 22, 2010). In *McGreevy,* the Court reasoned that the Appeals Council is only charged with granting review if, in relevant part, "the action, findings, or conclusions of the administrative law judge are not supported by substantial evidence." *Id.* at *1; 20 C.F.R. § 416.1470(a)(3). In this case, at the time of the ALJ's opinion, Ms. Czosnowski was only 49 years and two months old, rendering her "not disabled" under the Grids. Her contention is that because she turned 50 prior to the Appeals Council's denial of review, it should have awarded benefits. However, "[a] rule that the Appeals Council must grant review whenever a change in circumstances occurs between the time of the ALJ's decision and the time the case reaches the Appeals Council would fundamentally alter the Appeals Council's role." *McGreevy*, 2010 WL 4823672, at *1. The Appeals Council is only to consider new evidence if it pertains to the period prior to the ALJ's opinion, and the change in Ms.

Czosnowski's age clearly does not. 20 C.F.R. § 416.1470(b). Accordingly, the denial of review does not warrant remand.

Instead, I recommend remand as a result of an inadequate discussion of Ms. Czosnowski's mental health impairments, coupled with inadequate evidence to support the conclusion that jobs existing in significant numbers in the national economy could be performed by someone with Ms. Czosnowski's RFC assessment. Beginning with the latter point, after being presented with the RFC assessment, the VE testified that the hypothetical individual could perform the reduced sedentary jobs of:

> Press clippings cutter-and-paster. That's DOT 249.587-014. That's sedentary with an SVP of 2. There are 2,700,000 of those jobs in the United States, 64,000 in Maryland. And a microfilming document preparer, that's DOT 249.587-018, sedentary work with an SVP of 2; 2,500,000 of those jobs in the United States, 60,000 in Maryland. And I would also say the contact with the public, that does not rule out telephone?
>
> ALJ: Yes.
>
> VE: All right. Then I would say that she could do an order clerk, taking orders over the telephone. That would be DOT 209.567-014, sedentary, SVP of 2; 210,000 nationally, 2,600 in Maryland.

(Tr. 53).

The DOT is the Dictionary of Occupational Titles, a document published by the United States Department of Labor and last updated in 1991. United States Department of Labor, Dictionary of Occupational Titles (4th Ed., Rev. 1991), *available at* http://www.oalj.dol.gov. In the DOT, the first two positions cited by the VE are described as follows:

**249.587-014 CUTTER-AND-PASTER, PRESS CLIPPINGS (business ser.) alternate titles: tearer, press clipping; trimmer, press clippings**

> Tears or cuts out marked articles or advertisements from newspapers and magazines, using knife or scissors. Records name of publication, page and location, date, and name of customer on label, and affixes label to clipping.

> **249.587-018 DOCUMENT PREPARER, MICROFILMING (business ser.)**
>
> > Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

The United States Court of Appeals for the Sixth Circuit considered similar VE testimony (including citation to the same document preparer position) in *Cunningham v. Astrue,* 360 Fed. Appx. 606, 615 (6th Cir. 2010). The Sixth Circuit opined:

> The VE based his testimony on job descriptions contained in the Dictionary of Occupational Titles ("DOT"), a document published by the Department of Labor that was more than a decade old when the ALJ heard Cunningham's claim. While the Social Security Commissioner does take administrative notice of this document when determining if jobs exist in the national economy, 20 C.F.R. § 404.1566(d)(1), common sense dictates that when such descriptions appear obsolete, a more recent source of information should be consulted . . . In light of the fact that more current job descriptions were available at the time of the hearing before the ALJ — the Department of Labor replaced the DOT with the Occupational Information Network (O*NET), a database that is continuously updated based on data collection efforts that began in 2001 — and that the two descriptions relied on by the VE are not found in O*NET, we conclude that the VE's dependence on the DOT listings alone does not warrant a presumption of reliability.

*Id.* at 615-16. The rationale in *Cunningham* is equally applicable to the position of "cutter-and-paster of press clippings using knives and scissors," which appears just as obsolete at the time of the ALJ hearing in late 2011 as the position of "document preparer for microfilming." Neither

7

position is found, either in an identical or substantially similar fashion, in O*NET.² As a result, I conclude that the ALJ's reliance on the VE testimony that those two positions exist in significant numbers in the national economy is not, on the current record consisting exclusively of the VE's reliance on a twenty-year-old document, supported by substantial evidence.

The final position relied upon by the ALJ, telephone order clerk, is not as obviously obsolete, and is supported by a relatively similar listing existing in O*NET. *See Summary Report for: 43-4151.00 Order Clerks*, O*NET Online, http://www.onetonline.org/link/summary/43-4151.00. However, the ALJ provided no explanation for his reasoning that a person who, by his own RFC assessment, "can only occasionally and superficially interact with the public, coworkers, and supervisors" is capable of a job requiring regular and sustained interaction with customers by "telephone or intercom system." *See* DOT 209.567-014 (noting that an order clerk "[t]akes food and beverage orders over telephone or intercom system and records order on ticket . . . Suggests menu items, and substitutions for items not available, and answers questions regarding food or service."). In fact, the totality of the ALJ's analysis of Ms. Czosnowski's ability to engage in social interaction is his statement that, "The claimant's mental health concerns include mood swings, which limit her ability to interact with others." (Tr. 16). His remaining discussion of her mental health evidence is limited to citation of GAF scores and references to generalizations such as "moderate limitations." (Tr. 18). Without further explanation supporting the notion that Ms. Czosnowski's social functioning limitation would not preclude her from fulfilling the duties of a telephone order clerk, I cannot conclude that the

---

² On its website, the Commissioner concedes that the DOT is "outdated," but states that, "O*NET's definitions of some occupational measures do not conform to requirements in our regulations, and we are not able to use O*NET in its current format in our disability adjudication process." *See* http://www.ssa.gov/disabilityresearch/occupational_info_systems.html. This Report and Recommendations should not be read to suggest that exclusive reliance on O*NET would be desirable or appropriate, given the Commissioner's position. Instead, where a VE is citing a job that likely has been rendered nearly or entirely obsolete by advances in technology since 1991, reference to O*NET to determine whether or not the position continues to exist might provide additional evidentiary support for an ALJ's conclusions.

ALJ's determination is based on substantial evidence. Thus, I recommend remand for further explanation and, if appropriate, better-supported testimony from a VE.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 19);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No.14); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.


Dated: April 23, 2014

/s/
Stephanie A. Gallagher
United States Magistrate Judge